IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | 8:10CR270 |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | MEMORANDUM OPINION |
| RONALD W. STARK, JR., ) | |
| ) | |
| Defendant. ) | |

This matter is before the court for sentencing. This memorandum opinion supplements findings made on the record at a sentencing hearing on January 19, 2011.

**I. BACKGROUND**

    A. Facts

The defendant was charged with receipt and distribution of child pornography.[1] He entered a plea of guilty to Count I of the Indictment. Filing No. 20, Minutes; Filing No. 22, Petition. The court accepted Stark's plea of guilty but deferred acceptance of the plea agreement pending the preparation of a Presentence Investigation Report (hereinafter, "PSR") by the United States Office of Probation (hereinafter, "the Probation Office") that calculated Stark's sentence under the United States Sentencing Guidelines ("the Guidelines"). Filing No. 20, Minute Entry.

---

[1]Specifically, he was charged in Count I of the indictment with knowingly receiving and distributing visual depictions and attempting to receive depictions of a minor engaging in sexually explicit conduct, in violation of 18 U.S.C. § 2252A(a)(2), and in Count II with knowingly possessing computer files containing an image of child pornography, in violation of 18 U.S.C. § 2252(a)(4)(B). Filing No. 1, Indictment. Under 18 U.S.C. § 2252A, it is a crime to knowingly receive or distribute any child pornography that has been mailed, shipped, or transported in interstate or foreign commerce by any means, including by computer. 18 U.S.C. § 2252A(a)(2). The mandatory minimum sentence for receipt and distribution of child pornography (the crime charged in Count I) is five years and the maximum is twenty years. 18 U.S.C. § 2252A(b)(1). In contrast, possession of child pornography (the crime charged in Count II) carries a maximum sentence of ten years for a first offender, with no minimum sentence. 18 U.S.C. § 2252(b)(1). Count II was dismissed on motion of the government.

In the PSR, the Probation Office based its outline of the offense conduct on the prosecutor's version of events. Filing No. 25, PSR (sealed) at 3-4. As part of undercover investigations, Nebraska State Patrol officers, FBI task force officers in Colorado and FBI task force officers in Oklahoma all downloaded child pornography via peer-to-peer networks from the defendant's computer. *Id*. The officers downloaded over 100 image files. *Id.* at 3-5. A search warrant was then executed and the Cyber Crimes Task force seized a number of hard drives from the residence. One hard drive was found to contain eight videos and a single image of child pornography, and another hard drive contained 2,000 images of child pornography, as well as over 5,500 videos and 600,000 images of child erotica. *Id.* at 4. A third hard drive involved ten videos and 200 images of child pornography and 340 videos and 58,500 images of child erotica. *Id.* at 5. The pornography videos and images contained numerous instances of prepubescent children, infants, bestiality and bondage. *Id*. at 5.

The Probation Office determined that the defendant's base offense level was 22 under U.S.S.G. § 2G2.2(a)(2). *Id.* at 6. It found the following upward adjustments were applicable: a two-level increase under U.S.S.G. § 2G2.2(b)(2) (for possession of material containing a prepubescent minor); a five-level increase under U.S.S.G. § 2G2.2(b)(3)(B) (for an offense involving distribution for the receipt, or expectation of receipt, of a thing of value, but not for pecuniary gain); a four-level increase under U.S.S.G. § 2G2.2(b)(4) (for material that portrays sadistic or masochistic conduct or other images of violence);[2] a two-

---

[2]Under Eighth Circuit case law, the materials possessed by the defendant portray sadistic conduct. *United States v. Diaz,* 368 F.3d 991, 992 (8th Cir.2004); *United States v. Belflower,* 390 F.3d 560, 562 (8th Cir. 2004) (per curiam) (stating that images depicting an adult penetrating or attempting to penetrate a minor are per se sadistic because "[s]uch images portray conduct sufficient to presume the infliction of mental or physical coercion or abuse upon a minor").

2

level increase under U.S.S.G. § 2G2.2(b)(6) (for use of a computer); and a five-level increase under U.S.S.G. § 2G2.2(b)(7) (for possession of more than 600 images).[3] *Id.* at 6-7. The application of these enhancements results in an adjusted offense level of 40. *Id.* at 7. After subtracting three levels for acceptance of responsibility under U.S.S.G. § 3E1.1, Stark's total offense level under the Guidelines is 37. *Id.* The Probation Office assessed 2 criminal history points for convictions for theft and theft of services in 1993 and 1998, resulting in a criminal history category of II. *Id.* At offense level 37 and criminal history category II, Stark's range of imprisonment under the Guidelines would be 235 to 293 months, but the Guidelines sentence is capped at the statutory maximum of twenty years, so the guideline imprisonment range becomes 235 to 240 months. U.S.S.G. § 5G1.1(c)(1).

The government adopted the findings in the PSR. Filing No. 23. At the hearing, the defendant moved for a departure from the Guidelines based on overrepresentation of his criminal history. He objected to the assessment of criminal history points for convictions that were too old to be counted. The government conceded that the assessment of criminal history points was not proper and agreed that the defendant should be in criminal history category I. He also argued for a variance under 18 U.S.C. § 3553(a).

Stark is forty-three years old. Filing No. 25, PSR at 10. He apparently has a GED and has attended community college. *Id.* at 11-12. He has been employed as a journeyman plumber. *Id.* at 12. He was a victim of physical, mental, verbal and sexual abuse as a child and has a history of drug and alcohol abuse. *Id.* at 10-11. He began drinking at age 9 and using methamphetamine when he was 13. *Id.* at 11. The defendant admitted he has a substance abuse problem and would benefit from substance abuse

---

[3]The Probation Office found the defendant accountable for 153,551 images of child pornography (2,018 videos x 75 images/video = 151,350 images + 2,201 images = 153,551 images of child pornography).

treatment. *Id*. He was married for 12 years and is now divorced. *Id.* at 10. He is presently involved in a relationship with a woman with two children, aged 9 and 12. *Id.* at 10. Following the defendant's arrest, the children were interviewed at Project Harmony in Omaha, Nebraska, and the interviews were inconclusive. *Id.* at 5. He denies sexual contact with the children. *Id*.

A psychological evaluation was performed on the defendant. Filing No. 25, Psychological Assessment (sealed) (CMF Doc #25, Page ID # 59-70). The evaluation indicates that the defendant is of average intelligence. *Id.* at 9 (CMF Doc #25, Page ID # 67). He was diagnosed as suffering from Depressive Disorder, Impulse Control Disorder, Dysthymic Disorder, and Obsessive-Compulsive Personality Disorder. *Id*. at 12 (CMF Doc #25, Page ID # 70). He is glum, pessimistic, lacks joy and has an inability to experience pleasure. *Id*. at 10 (CMF Doc #25, Page ID # 68). He appears to have difficulty controlling impulsive behaviors and engages in risk-taking behaviors. *Id.* at 9 (CMF Doc #25, Page ID # 67). Physical abuse and economic hardship during his developmental years caused him to start hoarding food, clothing, and other necessities and he began to hoard other items, including tools, papers, and pornography as he progressed in age. *Id*. at 11 (CMF Doc #25, Page ID # 69). This behavior "became an obsession with the resultant compulsion to continue to acquire more and more [pornography]." *Id*. He was rated low on a measure assessing propensity to engage in sexual violence in the future. *Id.* at 8 (CMF Doc #25, Page ID #66).

    B.  LAW

        1.  Sentencing

The Sentencing Guidelines are no longer mandatory and the range of choice in sentencing dictated by the facts of the case has been significantly broadened. *See United*

4

States v. Booker, 543 U.S. 220, 260-61 (2005); Gall v. United States, 552 U.S. 38, 59 (2007); Kimbrough v. United States, 552 U.S. 85, 101 (2007); Rita v. United States, 551 U.S. 338, 349-50 (2007); Cunningham v. California, 549 U.S. 270, 286-87 (2007). District courts must "give respectful consideration to the Guidelines," but are permitted "'to tailor the sentence in light of other statutory concerns as well.'" Kimbrough, 552 U.S. at 101 (quoting Booker, 543 U.S. at 245-246).

In imposing a sentence, the district court must consider the factors set out in the Sentencing Reform Act at 18 U.S.C. § 3553(a), including the nature of the offense, history and characteristics of the defendant, the need to deter criminal conduct, and the need to protect the public from further crimes by the defendant. *See*, e.g., Gall, 552 U.S. at 41, 49-50 & n.6; Booker, 543 U.S. at 259-60; Nelson v. United States, 129 S. Ct. 890, 891-92 (2009). That statute "contains an overarching provision instructing district courts to 'impose a sentence sufficient, but not greater than necessary' to accomplish the goals of sentencing." Kimbrough, 552 U.S. at 101 (quoting 18 U.S.C. § 3553(a)). The sentencing court must first calculate the Guidelines range, and then consider what sentence is appropriate for the individual defendant in light of the statutory sentencing factors explaining any variance from the former with reference to the latter. Nelson, 129 S. Ct. at 891-92.

In determining a sentence, the court can consider whether the guideline at issue exemplifies the Sentencing Commission's "exercise of its characteristic institutional role" which is "to formulate and constantly refine national sentencing standards, basing its determinations on empirical data and national experience, guided by a professional staff with appropriate expertise. Kimbrough, 552 U.S. at 108-09; Rita, 551 U.S. at 349-50. In

5

formulating most Guidelines, the Commission developed and used data on past practices and recidivism to establish offense levels for each crime, linked to a recommended imprisonment range, based on these sentencing statistics.  *See* United States Sentencing Commission, *Fifteen Years of Guidelines Sentencing:  An Assessment of How Well the Federal Criminal Justice System is Achieving the Goals of Sentencing Reform* 14, 72-73 (November 2004), available at http:// www.ussc.gov/ 15_ year/ 15_ year_ study_ full.pdf ("Fifteen-Year Assessment"); U.S.S.G. § 1A.1, intro. comment., pt. A, ¶ 3; *Kimbrough,* 552 U.S. at 96; *Gall,* 552 U.S. at 46 (noting that the Guidelines are "the product of careful study based on extensive empirical evidence derived from the review of thousands of individual sentencing decisions").  When Guidelines are not the result of the Commission's exercise of its characteristic institutional role, such as when they are not based on any identified empirical approach, but are instead keyed to or guided by statutory directives, a court is not presented with the "ordinary case," in which "the Commission's recommendation of a sentencing range will 'reflect a rough approximation of sentences that might achieve § 3553(a)'s objectives'" and it is "not an abuse of discretion for a district court to conclude when sentencing a particular defendant" that application of the guideline "yields a sentence 'greater than necessary' to achieve § 3553(a)'s purposes even in a mine-run case." *Kimbrough,* 552 U.S. at 109-110 (quoting *Rita,* 551 U.S. at 350); *see also Gall,* 552 U.S. at 46 n.2 (noting that not all Guidelines are tied to empirical evidence).

      Both for policy reasons and because Congress had enacted mandatory minimum sentences, the Commission departed from past practices in setting offense levels for child abuse crimes and sexual offenses.  Fifteen-Year Assessment at 15, 72-73; United States Sentencing Commission, *The History of the Child Pornography Guidelines* 44-48  (October

6

2009), available at http://www.ussc.gov/Publications/Offense_Types/index.cfm ("Child Porn. History Rep't") (discussing the Commission's approach to setting a base offense level that corresponds to a mandatory minimum sentence) (last visited Jan. 3, 2011); Troy Stabenow, *Deconstructing the Myth of Careful Study: A Primer on the Flawed Progression of the Child Pornography Guidelines* (July 3, 2008), available at http://mow.fd.org/index.shtm (unpublished comment, last visited January 3, 2011). The Guidelines for child exploitation offenses were not developed under the statistical approach, but were promulgated, for the most part, in response to statutory directives. Child Porn. History Rep't at 6 (stating "Congress has specifically expressed an intent to raise penalties associated with certain child pornography offenses several times through directives to the Commission and statutory changes aimed at increasing the guideline penalties and reducing the incidence of downward departures for such offenses" and noting that "[the Commission] must bow to the specific directives of Congress"); *see, e.g.,* U.S.S.G. App. C, Vol. I, Amends. 435 & 436 (Nov. 27 1991), 537 & 538 (Nov. 1, 1996); Vol. II, amends. 592 (Nov. 1, 2000), 615 (Nov. 1, 2001), 649 (April 30, 2003); Supp. Vol., amends. 651 (Oct. 27, 2003), 664 (Nov. 1, 2004); United States Sentencing Commission, *Report to Congress: Sex Offenses Against Children, Findings and Recommendations Regarding Federal Penalties* (June 1996), available at http://www.ussc.gov/Legislative_and_Public_ Affairs/Congressional_Testimony_and_Reports/Sex_Offense_Topics/199606_RtC_Sex _Crimes_Against_Children/SCAC_Executive_Summary.htm (last visited January 3, 2011) ("Sex Offenses Rep't").

Over the years, Congress has passed numerous laws of increasing severity that regulate child pornography and exploitation of children. *See, e.g.,* the Protection of

Children Against Sexual Exploitation Act of 1977, *codified as amended* at 18 U.S.C. §§ 2251-2253; the Child Protection Act of 1984, *codified as amended* at 18 U.S.C. § 2253; the Child Protection and Obscenity Enforcement Act of 1988, *codified as amended* at 18 U.S.C. §§ 2251 & 2252(a); the Sex Crimes Against Children Act of 1995, *codified as amended* at 18 U.S.C. §§ 2251 & 2252; the Child Pornography Prevention Act of 1996, *codified as amended* at 18 U.S.C. § 2251 (extending the prohibition against child pornography to sexually explicit images that appear to depict minors but were produced without using any real children), *invalidated as unconstitutional* in *Ashcroft v. Free Speech Coal.*, 535 U.S. 234 (2002), & 2252A; the Protection of Children from Sexual Predators Act of 1998, *codified as amended* at 18 U.S.C. § 2426; the Prosecutorial Remedies and Other Tools to End the Exploitation of Children Today Act of 2003 ("PROTECT Act"), *codified as amended* at 18 U.S.C. § 2252B; the PROTECT Our Children Act, Pub. L. No. 110–401, § 304 (2008).

The amendments and recommendations had the goal of "ensur[ing] lengthy incarceration of repeat sex offenders who show the greatest risk of victimizing children." Sex Offenses Rep't, Executive Summary at i.  The Sentencing Commission acknowledged in its report, however, that federal prosecutions for child sex offenses represented a small percentage of the total number of such cases nationwide, because the vast majority of sex offenses were prosecuted in state court.[4]  *Id*.  Noting that "[p]enalties for sex offenses against children have been increased in recent years and are quite severe," the

---

[4] In fact, the Commission's report was based on a study of only twenty-two Internet child pornography cases sentenced under U.S.S.G. § 2G2.2, the trafficking/receipt Guideline.  Sex Offense Rep't at 29.

commission nonetheless found amendments appropriate "to increase sentences for the most dangerous offenders." *Id*.

The text and structure of the criminal child pornography statutes prohibit conduct across a spectrum of activity ranging from merely possessing child pornography to "mailing, transporting or shipping child pornography" to "knowingly receiving or distributing child pornography" to "knowingly reproducing, advertising, promoting, presenting or distributing" child pornography to "knowingly selling or possessing with intent to sell" child pornography. 18 U.S.C. § 2252A(a)(1)-(4). The clear focus of this legislation and concomitant Guidelines revision is on the patent evils of child pornography and the new dimension that computer technology adds to those evils. *See* Child Pornography Prevention Act of 1996, Omnibus Consolidated Appropriations Act, Pub. L. No. 104-208, § 121, 1996 H.R. 3610, 104th Cong., 110 Stat. 3009, 3009-26 (1996); *see also* notes following 18 U.S.C.A. § 2251; Child Porn. History Rep't at 30-31. In particular, amendments to the Guidelines reflect Congressional concerns that "pedophiles, including those who use the Internet, are using child pornographic and obscene material to desensitize children to sexual activity, to convince children that sexual activity involving children is normal, and to entice children to engage in sexual activity." U.S.S.G. App. C., Vol. 2, amend. 592 (Nov. 1, 2000); Child Porn. History Rep't at 30-31. In drafting the Guidelines, the Commission was also interested in "how best to identify those offenders at the greatest risk of recidivism." Child Porn. History Rep't at 37. The primary victims of the crime of possession of pornography are the exploited children. *See United States v. Rugh,* 968 F.2d 750, 756 (8th Cir. 1992).

The Commission reports that its efforts to ensure proportionality between the child pornography trafficking, receipt, and possession offenses with other crimes such as first degree murder, second degree murder, assault with intent to murder, conspiracy to commit murder, rape, production of pornography, voluntary manslaughter, kidnapping, and travel to engage in a sex act, have resulted in median sentences in fiscal year 2008 "of 78 months for offenders sentenced at § 2G2.2 [for possessing and trafficking in material involving sexual exploitation of a minor]; 108 months for offenders who traveled to engage in a prohibited sexual conduct with a minor sentenced at § 2G1.3(a); 139 months for criminal sexual abuse offenders sentenced at § 2A3.1(a); and 240 months for production of child pornography offenders sentenced at § 2G2.1." Child Porn. History Rep't at 47 n.219, 48 n.224. The Commission also notes that "[s]entencing courts have also expressed comment on the perceived severity of the child pornography guidelines through increased below-guidelines variance and downward departure rates." *Id. at* 54.

**II.   DISCUSSION**

 A.   Guideline Calculation

The court sustains the defendant's objection to his criminal history calculation. The court finds the defendant's criminal history category should be category I. The court otherwise adopts the findings in the PSR. The PSR is amended to reflect that Stark's criminal history category is I. Stark's base offense level under the Guidelines is 22. See U.S.S.G. § 2G2.2(a)(1). The court finds the following adjustments are applicable: a two-level increase under U.S.S.G. § 2G2.2(b)(2) for possession of material containing a prepubescent minor; a five-level increase under U.S.S.G. § 2G2.2(b)(3)(B) for an offense involving distribution for the receipt, or expectation of receipt, of a thing of value, but not

for pecuniary gain; a four-level increase under U.S.S.G. § 2G2.2(b)(4) for material that portrays sadistic or masochistic conduct or other images of violence; a two-level increase under U.S.S.G. § 2G2.2(b)(6) for use of a computer; and a five-level increase under U.S.S.G. § 2G2.2(b)(7) for possession of more than 600 images. The court finds a downward adjustment for acceptance of responsibility is warranted. Stark's resulting offense level is 37. At criminal history category I, Stark's recommended sentencing range under the Guidelines is 210 to 240 months. No departure is warranted.

      B.   Section 3553(a) Factors

Stark's motion for a deviation or variance from the Guidelines is granted. The court finds a sentence outside the Guidelines is warranted in this case. The court finds that a sentence of incarceration for 84 months (7 years) followed by a term of supervised release of five years will fulfill the objectives of sentencing set out in Section 3553(a).

With respect to the nature and circumstances of the offense, the court finds that possession and distribution of child pornography are forms of sexual exploitation and are serious offenses. Sexual exploitation offenses include the production of child pornography and the exploitation of children for the purposes of prostitution or the production of pornography, as well as trafficking in pornography. Criminalizing the possession of child pornography is a necessary complement to laws banning distribution of such items, and is intended to destroy the market for exploitation of children. Stark's conduct falls close to the low end of the continuum of criminal conduct—from possession to distribution to production to predatory abuse—that exploits children. A possessor of child pornography is the least culpable in the chain and is a marginal player in the overall child exploitation scheme. The varying levels of participation and blameworthiness in connection with

distribution are meant to be accounted for in the Guidelines' market-oriented scheme. The statutes criminalizing the possession and distribution of child pornography are aimed at the widespread and profit-driven dissemination of child pornography that the Internet facilitates and fosters. Although file-sharing arrangements contribute to Internet trafficking in child pornography, there is a qualitative difference between sharing one's computer files and selling child pornography for profit. Because he is not engaged in a profit-making enterprise, Stark is not in the same class as a large-scale distributor of porn; nonetheless, the size and breadth of his collection is troubling. Though his conduct may be attributable to hoarding, a significant amount of child pornography was nonetheless made available to the public. However, there has been no showing that Stark possessed child pornography in order to entice a child, had any improper contact with children, photographed minors engaged in sexual conduct, or made attempts to contact a child. The court finds that because he possessed such an unusually large number of images, Stark should be sentenced to a term of imprisonment somewhat above the statutory minimum.

In making this determination, the court has considered Stark's history and characteristics. Stark was subject to abuse as a child and has had drug and alcohol abuse problems as well as mental health issues. Based on the court's review of the record, it appears that Stark's mental status contributed to his actions and must be considered in determining his culpability for his actions. His negative self-image, dysthymic disorder, emotional deficits, and propensity for hoarding lessen his culpability to some degree. Importantly, psychological testing shows that he is at low risk to commit sexual violence in the future.

The court has consulted the Guidelines and has used the Guidelines calculation as its initial starting point. However, the child pornography Guidelines are driven by Congressional directive and are not grounded in any scientific, statistical, or empirical method. The advice imparted in the Guidelines does not reflect the sort of empirical data, national experience, and independent expertise that characterize the Sentencing Commission's institutional role. Given the flaws in the Guidelines' scheme for punishment of Internet child pornography crimes, the court does not accord a high degree of deference to the Guidelines. The Sentencing Commission diverged significantly from its studied, empirical approach in formulating the Guidelines that apply to Stark's case and the result is a recommended sentence that is greater than necessary to provide just punishment. Although downloading child pornography is hardly a harmless activity, it is not the equivalent of direct physical abuse or sexual molestation of children, or production of pornography involving children. The court finds that the ranges of imprisonment recommended under the Guidelines may be appropriate for a sexual predator, but are not a reliable appraisal of a fair sentence in this case.

The Guidelines' sentencing scheme for child pornography crimes illogically skews sentences for "average" defendants to the upper end of the statutory range, regardless of the particular defendant's acceptance of responsibility, criminal history, specific conduct, or degree of culpability, thus blurring distinctions between the least culpable and the worst offenders.[5] In the context of this and other Internet child pornography crimes that involve

---

[5] In this case, the application of numerous enhancements raise Stark's offense level from 22 to 37 on a scale that tops out at level 43. Virtually all of the offenders that have been prosecuted in this court have offense levels this high. Offense levels at or near the top of the sentencing table are generally reserved for only the most serious of offenses and the most dangerous of offenders. This defendant does not belong in that category.

peer-to-peer networks, the Guidelines provide little distinction between a low-level distributor and a high-level distributor. In this court's experience, there is essentially no Internet child pornography offender who could end up with a Guidelines-recommended sentence that falls at or close to the low end of the statutory range. A five-year sentence would equate to a Guidelines offense level of 25. With the base offense level established at 22, and a two-point enhancement for use of a computer that is applied in every Internet child pornography case, only an offender who merely received pornography and did not distribute it at all and possessed fewer than ten images that did not contain any of the images of prepubescent minors and sadistic or masochistic acts that are widely prevalent in child pornography would receive a sentence at the low end of the statutory range. Because of the nature of peer-to-peer file sharing programs, a simple possessory crime evolves into a distribution offense as soon as someone accesses a shared file. In virtually every child pornography prosecution, the application of numerous and severe enhancements results in a Guidelines sentencing range whose low end is close to the statutory maximum. In this case, as in most, a fairly typical offender with an insignificant criminal history has a recommended Guidelines imprisonment range that is close to the statutory maximum at its low end and would exceed the statutory maximum at the high end, if it were not capped.

  Stark is subject to enhancements for use of a computer and for the number and type of images that apply in virtually every case. The Internet has become the typical means of obtaining child pornography, and Internet child pornography cases are essentially the only kind of child pornography crime prosecuted in federal court. The enhancements for use of a computer and number of images lack value as a reliable proxy for culpability

and are a poor gauge of relative levels of fault between offenders. Because of the unfortunate ease with which large numbers of images can be accessed and stored, most child pornography offenders are subject to enhancements from two to five levels for the number of images.[6]

In this type of distribution scheme, the number of images does not provide the distinction between a large-scale and a small-scale child pornography purveyor that Congress and the Sentencing Commission must have envisioned when promulgating this market-based and quantity-driven scheme. For example, in contrast to drug quantity in a drug-trafficking prosecution, where the amount of a drug a defendant possesses may have some correlation to his position in a distribution hierarchy, the number of images a defendant possesses is meaningless as an indicator of any position in a pornography distribution system. The images can be endlessly replicated. Whatever connection there may be between a defendant's relative guilt and the number of images he possesses, an enhancement of five levels for possession of over 600 images overstates that connection. The increased dangers and harms that make distribution a more serious crime than possession are accounted for in the statutory scheme by the mandatory minimum sentence provided in section 2252A, and need not be augmented by Guidelines enhancements that further increase a defendant's sentence. As noted, the court finds that the size and breadth of the defendant's collection, of child erotica as well as child

---

[6] A five-level enhancement is provided for possession of more than 600 images. In the court's experience, virtually all offenders fall in that category, with most possessing thousands of images. However, whatever qualitative difference in culpability that may be reflected in the number of images, the distinction between possession of hundreds of thousands of images, as opposed to "mere" thousands, is not reflected in the Guidelines at all.

pornography, is troubling. This concern is reflected in a sentence two years above the statutory mandatory minimum.

The court finds the low-end Guidelines-recommended sentence of seventeen and a half years (based on the imposition of numerous and excessive enhancements for circumstances that appear in nearly every child pornography case such as use of the Internet, amassing numerous images, possessing images of prepubescent minors and violence, and some "distribution" of images in return for other images) is greater than necessary to protect the public and to deter Stark from reoffending. A sentence of 84 months is appropriate to achieve the goals of sentencing in this case. Seven years is a significant term of imprisonment for an offender who has not spent much time in jail.

The public will be adequately protected by a five-year term of supervised release with strict conditions and by the provision of mental health treatment and sex offender treatment to Stark. The mere fact of the prosecution of these cases arguably deters others from engaging in this sort of conduct, but much of that market is driven by compulsive behavior that arguably will not be deterred in any event. The deterrent effect of a lengthy sentence is further lessened by the international market for child exploitation offenses. The court finds any additional deterrent value of a sentence longer than seven years would be marginal. Further, to the extent that harsh punishment is necessary to deter harm to children, punishing a less-culpable offender as harshly as the worst does not satisfy the goals of sentencing and encourages disrespect for the law.

The court has also considered the need to avoid sentencing disparities. The history of legislative enactments in this area reflects Congressional concern with the use of computers to lure or entice children into sex acts. Possession of child pornography was

criminalized in part because of concerns that the Internet facilitated access to and enticement of minors for sexual exploitation, as well as concerns that pedophiles use the materials to desensitize and entice victims.  This case does not involve such conduct and there is no indication that Stark is likely to engage in any such conduct.  Legislative history shows Congressional concern with dangerous child abusers and repeat offenders.  The enhancements of increasing severity for quantity and for recidivism are designed to apply to the most dangerous of child pornography offenders and Stark does not fall in that category.  There is no evidence that Stark has ever abused, or is likely to abuse, children.  Stark's limited criminal history and low risk of sexual violence suggests that a sentence of seven years, followed by five years of supervised release, is likely to afford adequate punishment and deterrence.

The court further finds that an outside-the-Guidelines sentence will respect the distinction between Stark's culpability and the far greater culpability of an actual predator or abuser.  The sentence of a purveyor or distributor of child pornography should be proportional to and significantly lower than a sentence for an exploitative crime that involves acts of abuse by a defendant.  Moreover, the court finds that a sentence of seven years is more proportional to other crimes than the lengthy recommended Guidelines sentence would be.

Under the Guidelines scheme, a person who views child pornography on the Internet can receive a longer sentence than the actual perpetrators of child abuse and those who commit serious drug crimes, assaults and even murder.  Stark's sentence is close to the median sentence for a person sentenced for child pornography crimes under the statutory provision that does not have a mandatory minimum sentence.  Also, the

8:10-cr-00270-JFB-TDT   Doc # 27   Filed: 02/08/11   Page 18 of 18 - Page ID # 94

sentence is relatively proportional to the median sentences for defendants who have engaged in more serious child sexual exploitation crimes such as production of child pornography, travel to engage in sexual conduct with a minor, or sexual abuse of minors.

DATED this 8th day of February, 2011.

BY THE COURT:

s/ Joseph F. Bataillon
Chief District Judge

---

*This opinion may contain hyperlinks to other documents or Web sites. The U.S. District Court for the District of Nebraska does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide on their Web sites. Likewise, the court has no agreements with any of these third parties or their Web sites. The court accepts no responsibility for the availability or functionality of any hyperlink. Thus, the fact that a hyperlink ceases to work or directs the user to some other site does not affect the opinion of the court.